## KRING & JOHNSON vs. GREEN'S EXECUTORS.

Executions in favor of A., issued by a justice of the peace, were levied on personal property of B., by the constable. The same property was then taken by the sheriff, on executions in his hands, and sold; not being sufficient, the sheriff also sold certain real estate of B., on which C. and D. had a mortgage given subsequent to the issuing of the sheriff's executions. C. and D. purchased the real estate at the sheriff's sale for an amount greater than the executions in his hands, and retained the excess.

Held:—

On a bill filed by the sheriff, to compel A. and C. and D. to interplead, that the executions in favor of A. were entitled to be paid out of the surplus in the hands of C. and D., although such executions were no lien on the land, they were on the personal property sold by the sheriff, and the proceeds of that sale having reduced the lien against the real estate, must be applied to their payment.

## APPEAL from Howard Circuit Court, (in Chancery.)

LEONARD & HAYDEN *for Appellants.*

### POINTS AND AUTHORITIES.

1st. The facts stated in the complainant's bill, in relation to the $500, in the hands of Kring & Johnson, are not such as will sustain an interpleading bill in relation to that money—and so far the bill ought to have been dismissed. Story's Eq. Pl. 3d ed. §291, 297.

2d. Admitting that, upon the facts stated, an interpleading bill may be sustained in relation to the $500, yet the pleadings in this case, (there being nothing but the interpleading bill, with the defendant's answers thereto,) do not warrant the decree against Kring & Johnson, that they pay over to Green so much of the $500, in their hands, as will satisfy the balance due on his two executions against Cotton.

3d. If upon the defendant's answers to an interpleading bill, such a decree can be made in any case, the facts stated in Green's answer, do not, in equity, entitle him to the relief against Kring & Johnson, that has now been decreed to him.

TODD *for Appellees.*

### POINTS AND AUTHORITIES.

1st. That as no bill of exceptions was taken, the decree must stand, so far as the merits depend upon the evidence.

2d. That the prayer is sufficiently broad and comprehensive to justify a decree against any defendant in whose hands the money in issue may be—for constructively it is held for Ford and by him—and the allegations, (and the proof must be supposed to establish them,) are sufficiently ex-

plicit to shew Johnson & Kring were holders for Ford's use and benefit: equity need not make a formal decree against Ford for the sum in their hands, and in favor of Ford against them—such circuity is not necessary—the parties being all before the Court, and assenting to a trial of the issue of its distribution.   1st Wheaton 179; 9th Mo. Rep. 201.

3d. The prayer in Ford's bill, that the parties interplead for a perpetual injunction, and for general relief—and the parties, in fact, interpleading—gives the Court power to decree against any and all parties, according to the equity of the case.

4th. That the parties, appellants, are estopped from demurrer to the equity of original bill—presenting their answer as a statement of claim to the fund before the Court, waives previous irregularity, and waives even decree to interplead.

5th. The practice of Court would authorize a rule, order or decree for the money to be brought in at any time before or after final hearing—and upon the facts interplead by the parties, will justify the decree.

6th. The appellants cannot object to the sufficiency of the bill of interpleader, they should have had a decree to interplead, and have appealed from it, if against them—they waived such decree, and agreed the answers filed should form the issues, and went to trial thereon—it waives all objection to the sufficiency of the interpleading bill.

McBRIDE, J., *delivered the opinion of the Court.*

In October, 1841, Ford filed a bill in the Howard Circuit Court against Green, Johnson, Kring, and others, in which the following facts are charged:—

In March, 1838, several judgments were recovered against Cotton, in the Howard Circuit Court, and afterwards in April, 1838, several transcripts of justices' judgments were filed in the clerk's office of that Court against Cotton, and upon which executions to the amount of about $1745, were issued, and delivered to the sheriff of Howard county, on various days between the 2d and 10th April, 1838, and levied on the same day that they went into the sheriff's hands, upon all the real and personal property of Cotton in Howard county.

On the 3d March, 1838, Joel H. Green recovered two justices' judgments against Cotton, for the total amount of about $270.   On the 6th March, 1838, executions were issued, and delivered to the constable of Richmond township, in Howard county, and on the 10th day of the same month, they were levied by the constable upon a portion of the personal property of Cotton.   These executions were renewed respectively on the 5th April and 5th May, 1838, for thirty days, and finally returned on the 19th May, 1838, "property unsold for want of bidders."

On the 14th April, 1838, and on the 18th May, 1838, Cotton executed several mortgages to Johnson, Kring, and others, upon 40 acres of land, and his tavern, in the county of Howard, to secure a total amount of about $1200, and these mortgages were filed for record on the same day they were executed respectively.

The sheriff sold the personal property under the executions in his hands, and it yielded about $735. This embraced all of the personal property seized by the constable under Green's executions. He then sold the forty acre lot of land for $100, which left a balance due upon the executions in his hands of about $910. The tavern was then sold and bought in by the defendants, Kring and Johnson, who made the purchase for the benefit of several persons secured by Cotton's mortgages upon the property. They bid $1550, of which they paid to the sheriff $1050, and retained in their own hands the balance, $500, with an understanding that it should be considered as a loan from Ford to themselves—they, however, insisting at the same time, that it belonged to them, and the other mortgagees upon the property.

In December, 1840, executions were issued upon Green's judgments against Cotton, and Ford, the sheriff, was summoned as garnishee upon these executions, and having admitted, in his answer to the interrogatories exhibited against him, that he had money in his hands belonging to Cotton, and collected by him as sheriff, judgments were rendered against him for the several amounts due upon Green's judgments. It was agreed, however, between Ford and Green, that the judgments against Ford, as garnishee, should not be collected until the determination of the suit at law that Ford had instituted against Kring and Johnson, for the $500 in their hands, the balance of their bid for the tavern, and then only in the event that the right to the money should be settled in favor of Ford.

Johnson and Kring claim the $500 as mortgagees of Cotton's real estate, in Howard county, and Green claims so much of it as may be necessary to satisfy his executions against Cotton, by virtue of the levy of these executions upon Cotton's personal property by the constable.

The prayer of the bill is, that the claimants, Green, Kring, Johnson, and the other mortgagees may interplead so as to determine their right to the money in dispute, and for an injunction against the collection of Green's judgments against Ford, as garnishee, until the final disposition of the cause.

In February, 1842, Green filed his answer. He admits the judgments, executions, and proceedings thereon, against Cotton, as mentioned in the bill, and admits the judgment and proceedings thereon against Ford, as garnishee; but denies that the latter judgments were taken upon any agreement of the kind stated in the bill. He admits the Circuit Court judgments and executions against Cotton, and proceedings thereon, as stated in the bill, but denies all knowledge of their mortgages—of Kring and Johnson's purchase of the tavern for the benefit of the mortgagees,

and the agreement between Ford and Kring and Johnson, that $500 of the purchase money, bid for the tavern, should remain in the hands of the latter as a loan. He insists that he is entitled to the proceeds of the personal property to satisfy his executions, in preference to the Circuit Court executions, under which the property was sold, and that the matters set up by the complainant Ford, afford no ground to protect him from the judgment against him, as garnishee.

In conclusion, Green prays that his answer may be considered as a cross bill—that his co-defendants may be made defendants thereto, and compelled to answer the same, and that the funds in Ford's hands may be distributed according to priority of lien, so as to satisfy his executions in preference to the Circuit Court executions, in the event of the Circuit Court sustaining the bill, but insists that the bill of complainant ought to dismissed, and he allowed the benefit of his judgments at law against Ford.

On the 30th May, 1842, Kring, Johnson, and others answered. They deny that Kring and Johnson retained the money in their hands under an agreement that it should be considered a loan, and admit all the other matters charged in the bill, so far as they have any interest in, or knowledge of the same.

They set up and insist upon their right to the $640, overplus of proceeds of sales of real estate, after satisfying the Circuit Court executions, and deny that Green has any right to satisfaction of his judgment out of the fund in the complainant's hands.

In October, 1842, Green, by leave of the Court, and with the assent of the parties, withdrew his cross bill. The summons was served on the other defendants, and the bill taken as confessed against them, for want of an answer in May, 1843, and on the same day Green filed a replication to the answer of his co-defendants.

On the 22d December, 1843, the cause was heard and a decree made that Green's two executions are entitled to the $139 76, being the balance of the proceeds of the sale of Cotton's real estate, in Ford, the sheriff's hands, and directing him to pay over the same accordingly; and that the balance due on said two executions, is $242 15, and that Green is entitled to payment of the same out of the proceeds of the sale of real estate in the hands of Kring and Johnson, and directing them to pay the same over accordingly—the costs are also decreed in favor of Green and Ford, against the defendants.

From this decree, the defendants, Kring and Johnson, have appealed to this Court.

The first point raised by the counsel for Kring and Johnson, in this Court, is one which should more properly have been made in the Court below, but which it appears escaped the vigilance of the counsel until the present time. If the defendants had demurred to the bill because the facts stated would not authorize a bill of interpleader as against them, an opportunity would then have been afforded the complainant, if the demurrer was well taken, to have amended his bill so as to have obviated the objection to it, if in his power to do so. His right to amend, and thereby present his case to the Court, in the most objectionable form, has been cut off by the course of proceeding on the part of the defendant; notwithstanding, we shall examine the objection now taken and see if there be any force in it.

"It is observable, (Story's Eq. Pl. §806,) that the jurisdiction of Courts of equity to compel an interpleader, follows to some extent the analogies of the law. It is properly applied to cases where two or more persons claim the same thing, by different or separate interests from another person, who, not claiming any interest therein himself, and not knowing to which of the claimants he ought, of right, to render the debt or duty claimed, or to deliver the property in his custody, is either molested by an action or actions brought against him, or fears that he may suffer injury from the conflicting claims of the parties; and therefore applies to a Court of equity to protect him, not only from being compelled to pay or deliver the thing claimed to both the claimants, but from the vexation attending upon suits, which may possibly be instituted against him." (See also Cooper, &c., and Chitty, &c., 1 Bur. R. 37.)

The case at bar comes fully within the rule laid down by Story; for here, Green and Kring and Johnson claim the fund in Ford's hands, by separate interests from him, who not claiming any interest therein himself, and not knowing to which of the claimants he ought of right to pay the money, and being sued and judgment had against him in favor of Green, he files his bill of interpleader.

It has been intimated by the defendants, that the fund in question was not in the hands of Ford, and therefore he had no right to call upon the parties claiming it, to interplead and establish their rights. This objection may be met by two facts stated in the bill; first, the proceeds of the sale of the property of Cotton, after satisfying the executions in Ford's hands, left a balance of $644 79-100; second, Ford in his answer to the garnishment of Green, admits the balance above to be in his hands, and in his bill alleges that $500 of that balance was loaned to Kring and Johnson, the defendants. So far, therefore, as Ford is concerned, the money

is in his hands, and it does not become the defendants, under the circumstances under which they retained the $500, in their hands, to say that it is not in contemplation of law, in Ford's hands. It ought to be there, and for all the purposes of this suit, it will be considered as in his hands.

Do the facts stated by Green in his answer entitle him to be paid his debts out of this fund? He alleges that his executions were in the hands of the constable of Richmond township, in Howard county, the residence of the defendant Cotton, and were, by the said constable, levied on the personal property of Cotton, prior to the emanation of the executions from the clerk's office of the Howard Circuit Court, and which were subsequently levied by the sheriff of the said county, on all the real and personal property of Cotton, including that levied upon by the constable under his executions—that the sheriff sold the whole of the property, commencing with the personal property, and applied a sufficient amount of the proceeds of the sale to the payment or satisfaction of the executions in his hands—that after satisfying all the executions in the sheriff's hands, there remained a balance of $644, or thereabouts. That his executions and levy being prior in date to the executions in the hands of the sheriff, should have been first satisfied; and that the executions in the sheriff's hands were prior in date to the mortgages under which Kring and Johnson claim the right to retain the balance of the purchase money.

If we understand the position assumed by the attorney for the defendants, it is stated that the balance in Ford's hands, of $644 79-100, was produced by the sale of the real estate of Cotton, to-wit: the tavern house; and that as the executions of Green issued from a justice's judgment, and were no lien on real estate, therefore, Green has no right to have this balance, or any part of it, applied to the satisfaction of his executions; that if Green had a prior lien, in was on the personalty, and should have been satisfied out of the sale of the personal property by the sheriff.

But whether Green's executions were satisfied out of the *identical* money received for the sale of Cotton's personal property, or out of the proceeds of the sale of the real estate, cannot make any difference to Kring and Johnson; for, if paid out of the first fund, it would have left a larger balance remaining unsatisfied, on the executions in the sheriff's hands, and which would have to be made out of the real estate. It was the duty of the sheriff to first satisfy the elder lien, in the constable's hands, out of the proceeds of the sale of the personal property, which had been seized by the constable, under Green's executions, and then

apply the balance to the executions in his hands. Two reasons would appear to dictate this course, in the present case; the lien of Green had priority; and as it was a judgment before a justice of the peace, and could not be enforced out of the real estate, whilst the others were Circuit Court judgments, and operated as liens on the real estate, if equal in point of time, still Green's execution should have been preferred.

This would be a principle of justice as between execution creditors, and we cannot perceive how it could operate an injury to the defendants here, who took their mortgages on the property of Cotton, charged with the lien and incumbrances of these several judgments.

For the foregoing reasons, the decree of the Circuit Court should be affirmed, and the other Judges concurring, the decree is affirmed.