# Porter *against* Boone.

A levy, upon an execution, of personal property to an amount sufficient to pay the judgment upon which it issued, is a satisfaction of the debt, if the levy be released by the plaintiff, and becomes lost to the defendant; but if the release by the plaintiff be at the instance and request of the defendant, it does not amount to satisfaction.

ERROR to the Common Pleas of *Clearfield* county.

Hopkins Boone for the use of George W. Toland and William Magoffin against William Porter. *Scire facias quare executio non.* This cause was argued by

*Wallace* and *J. Fisher*, for plaintiff in error.
*Smith* and *Blanchard, contra,* whom the Court declined to hear.

HUSTON, J.—On the 16th of March 1835, by virtue of a power of attorney a judgment was entered in Clearfield county, Hopkins Boone against William Porter. Real debt $406.36. Interest from 6th of March 1835.

Hopkins Boone being indebted to G. W. Toland and William Magoffin, on the 27th of August 1835 assigned to said Toland and Magoffin a part of this judgment, viz., $343.95, and on the 2d of October 1835, written notice of this assignment was given to William Porter, the defendant.

Early in January 1836, a *fieri facias* was taken out on this judgment, and "levied on all the interest of Porter in about 65,000 feet of boards at the mill; his interest in about 23,000 feet of plank, and about 3,000 staves, and about 3,000 shingles; his interest in two arks at the creek, and his interest in 150 acres of land bought from the heirs of John Ashley—his interest being one-fourth." The partners in the mill and lumber were, Hopkins Boone, John Long, Maxwell Long and William Porter. The defendant Porter and Maxwell Long gave in the levy.

It being well understood that to sell a large quantity of lumber for cash, in January, in Clearfield county, would be a great sacrifice, Porter applied to J. W. Smith, Esq., the attorney of Toland and Magoffin, to suspend the levy and permit him to run the lumber at the spring flood to a market down the river. Boone, who still owned part of the judgment, consented, or joined in this request, and it was granted.

[Porter v. Boone.]

At the time for rafting, the stuff was prepared, and the rafts constructed. Porter was present and assisting. Boone was to go on one raft, and one or both the Longs on another or others. The four partners in this lumbering business were known as Boone & Co., and this company owed some debts. At Harrisburg, Boone, after selling the lumber in his care, paid the hand who assisted him to steer the raft, and bid farewell to him, saying he would never be seen in Clearfield county. He went to the west. After the men came home, Porter called on J. W. Smith and paid $150 for Toland and Magoffin, asked for time to collect the residue, and after some months gave Mr Smith a power of attorney to sell his interest in the land to raise the residue of the money—and some time after revoked this power.

There was no evidence to show how much lumber was taken down the river and sold by Boone, nor how much was taken by the other partners, or how much was left; nor was there any evidence to prove whether the $150 paid by Porter was derived from lumber taken down by Boone, or by the other partners, or where or how he got that money.

A *scire facias* to revive the judgment was entered by consent, to which defendant Porter pleaded payment—and at the trial he seems to have been permitted to give in evidence, everything which would show a payment of any part, or that in equity and conscience he ought not to pay.

It was not suggested that the amount of the judgment as originally entered was not due to Boone.

When the assignment was made of part of this judgment, it left between $75 and $90 due still to Boone.

Porter was permitted to prove that since Boone went away he had paid debts due by Boone & Co.—but the one-fourth of those debts did not amount to the balance due Boone on the judgment, to say nothing of Toland and Magoffin's share.

The jury, however, would seem to have found nothing to be due to Boone on the judgment, but to have given a verdict for the balance due to Toland and Magoffin.

There was an attempt to say that if a plaintiff levies on defendant's goods, and afterwards releases the levy and permits the defendant to sell them, this discharges the debt; but as this could not be listened to, it was asked of the Court to say, whether if any fraud was practised on Porter, by which he lost the goods, he would not be discharged. This was fully answered, and the jury were told that if Toland and Magoffin, or their attorney, knew of or intended to get the goods into Boone's hands to defraud Porter, they must bear the loss, and not Porter. But if from the whole testimony they were satisfied that the levy was released at the instance of Porter, that the attorney did not know who would have charge of the lumber down the river, that

[Porter v. Boone.]

the arrangement to commit it to Boone was made by Porter, who assisted to construct the rafts—he had no cause to complain of the plaintiffs. Porter himself put the property into the hands of Boone, and if his partner deceived him, he must bear the loss; he occasioned it, and could not throw it on those who neither caused ·nor suspected the fraud. Another point was made, and cases cited to prove that the judgment not being assignable at law, the assignees took it subject to every defence which the defendant had against the assignor. This too was admitted by the court, but they told the jury it had relation only to a defence which defendant had at the time when he had notice of the assignment— that if after full notice of the assignment, Porter trusted property or money to Boone, he could not set that up against a creditor of whose claim he had notice, and especially against the plaintiff here, whose right was secure by the levy which he had solicited them to release and which had been released as a favour to him. If he after this trusted a man unworthy of trust, it was his misfortune.

There was no error in the opinions delivered by the court.

Judgment affirmed.