[No. 3630.    Decided April 22, 1901.]

ELIZABETH N. BRIER, *Appellant,* v. TRADERS' NATIONAL BANK OF SPOKANE, *Respondent.*

JUDGMENTS — CESSATION OF LIEN — REVIVAL — RIGHTS OF INTERVENING PURCHASERS.

Under Code Proc., § 460, which provides that the real estate of a judgment debtor shall be held and bound to satisfy any judgment for the period of five years from the date of its rendition, and that the lien of the judgment on such real estate shall continue only five years, commencing from the date on which the judgment was rendered, and under § 463. Id., which provides that a revived judgment shall be and continue a lien upon real

estate of a judgment debtor for a period of five years from and after the date of the order of revival, in like manner with the original judgment, but that no judgment should be revived unless proceedings therefor should be commenced within six years after the date of its rendition, the act of revival does not make the lien continuous, where application therefor is not made until after the expiration of the five years; and, where the lien has ceased, prior to the order of revival, it cannot be revived so as to affect the rights of a purchaser who had acquired title subsequent to the original judgment, but such after acquired title gains priority over the judgment during the interval between the cessation and revival of the judgment lien.

SAME — RES JUDICATA — MATTERS CONCLUDED.

An action seeking the foreclosure as a mortgage of a deed absolute on its face would not be barred on the ground of *res judicata* by the fact that, in a prior action between the same parties involving the same premises, the plaintiff herein being a subsequent grantee and defendant a prior judgment creditor, judgment had been rendered decreeing plaintiff's conveyance subject to the lien of the prior judgment, and authorizing the judgment creditor to sell on execution all of the interest of plaintiff's grantor in the premises, when the court in the prior action expressly found that the conveyance to the plaintiff in this action had been made subsequent to said judgment, but for a valuable consideration, and there was no finding or adjudication upon the question of the fraudulent character of the conveyance, though alleged and denied in the prior action, such issue not being material to the controversy therein.

Appeal from Superior Court, Spokane County.—Hon. LEANDER H. PRATHER, Judge. Reversed.

*Hamblen & Lund,* for appellant.

*Graves & Graves,* for respondent.

The opinion of the court was delivered by

WHITE, J.—This is an action by the appellant, in which she alleges that on the 22d of April, 1891, George F., Carrie B. and Jacob Schorr, at Spokane Falls (now Spokane), made their note for $1,975, payable to the order of one Henry M. Tilford, and, to secure the payment of

this note, George F. and Carrie B. Schorr, who were husband and wife, made a mortgage to said Tilford on certain real property in Spokane, which is described at length in the complaint; that, on April 16, 1892, George F. Schorr became heavily involved and unable to pay the mortgage or interest due, and, being threatened with foreclosure, he solicited the appellant, who is the mother of Carrie B. Schorr, his wife, to purchase said note and mortgage and hold the same in her own right, so that, whatever reverses should come, said Schorr would not be compelled to vacate the premises by reason of the foreclosure of the mortgage; that the appellant, desirous of aiding and assisting her daughter and son-in-law, and unwilling that said mortgage should be foreclosed, entered into negotiations with Henry M. Tilford, owner of the note and mortgage, for the purchase of the same, with the result that, on April 16, 1892, or thereabouts, the appellant paid therefor to said Tilford the sum of $2,250, which sum represented the principal and interest of said note at that time; that the appellant was of the age of sixty-eight years, and that at the time of the purchase of the note and mortgage she was accustomed to seek advice of relatives and friends with reference to matters of business, and upon the occasion referred to committed the consummation of said transaction to her son-in-law, the said George F. Schorr, who, upon advice of counsel, instead of procuring an assignment of said note and mortgage, caused to be executed and delivered by said Tilford a release thereof and placed the same upon record in the office of the auditor of Spokane county, on June 20, 1892; that none of the makers of said note, nor any one in their behalf, or at all, has paid said note and the mortgage, or any part thereof; that on November 18, 1891, George F. Schorr was indebted to Louise B. Stratton in the sum of $1,800, and to Charles F. Schorr

in the sum of $800; and that said George F. Schorr and his wife, for the benefit of Louise B. Stratton and Charles F. Schorr, and for the purpose of securing the payment of the sums due them, executed and delivered to Louise B. Stratton a mortgage upon the same property, which mortgage was recorded in the auditor's office of Spokane county; that the sums so last secured have not been paid; that on April 22, 1892, George F. and Carrie B. Schorr, having suffered great reverses and being reduced in property to the premises covered by said mortgages, desiring to protect and restore so far as possible the moneys due the appellant and Louise B. Stratton and Charles F. Schorr, and that each of said parties should share therein, obtained a release of the mortgages hereinbefore mentioned, and thereafter divided the premises described in said mortgages into three parts, and made, executed and delivered to the appellant an instrument in writing in the form of a warranty deed, but intended as security for the payment of said $2,250, which she had paid to Tilford, by which instrument the said George F. and Carrie B. Schorr granted, bargained, sold, and conveyed unto the appellant certain property, being the property in controversy in this action; that this deed was executed, acknowledged, and filed in the auditor's office of Spokane county, the filing for record being on June 20, 1892; that at the same time said George F. and Carrie B. Schorr executed and delivered unto Louise B. Stratton, for the benefit of herself and Charles F. Schorr, an instrument in the form of a warranty deed, but intended as security for the payment of said $1,800, on the remaining two-thirds of the property named in the mortgage, which deed was afterwards recorded in the auditor's office of Spokane county; that, at the time of the execution of said deed to the appellant, George F. Schorr represented to the appellant that the deed

would be better security than a mortgage, and would avoid
the necessity and expense of a foreclosure, and that the
appellant, relying entirely upon the advice and counsel
of the said Schorr in respect to this, received said deed
and recorded the same; that at the time these deeds were
made, and for a long time prior thereto, George F. Schorr
and his wife resided upon the property and claimed the
same as a homestead; that the Traders' National Bank of
Spokane and the other defendants have, or claim to have,
some interest or lien upon the premises described; that the
interest or claim of the Traders' National Bank is by vir-
tue of a judgment recovered in the superior court of Spo-
kane county, and levy upon and sale of the premises under
an execution on this judgment; but that such interest, lien,
or claim is subsequent and inferior to the lien of the ap-
pellant.    The complaint also alleges the payment of cer-
tain taxes from 1892 to 1895.    The prayer for relief is
that the release and satisfaction of the Tilford mortgage
be canceled, set aside, and held for naught, and that the
appellant be adjudged the owner of the same and the note
secured thereby, and subrogated to the rights of Henry M.
Tilford as they existed prior to the execution of said re-
lease and the recording of the same.    There is also a
prayer for judgment against George F. and Carrie B.
Schorr on the Tilford note; that the property be sold to
satisfy the same, and that all the defendants be forever
barred and foreclosed of their rights in the premises; that,
"if the foregoing relief shall be deemed inapplicable, then
that the instrument, in form of a warranty deed, made,
executed, and delivered to the plaintiff by George F.
Schorr and Carrie B. Schorr, be adjudged and decreed to
be a mortgage and the lien thereof paramount and su-
perior to the rights, liens, and equities of any or of all of
the defendants in the suit, or persons claiming under

them," etc.; and that said instrument, as a mortgage, be foreclosed and the proceeds applied to the payment of the sum found to be due appellant and secured thereby. There is also a prayer for general relief.

The Traders' National Bank, respondent, answered, setting up several defenses. The only one necessary to be considered, in view of the evidence and findings of fact, is that pleading a former adjudication of the rights of the appellant. This defense is, in effect, that on November 23, 1891, the respondent recovered judgment against George F. and Carrie B. Schorr in the superior court of Spokane county, in a suit therein pending against them; that a transcript of said judgment was on December 14, 1891, duly filed and recorded in the office of the auditor of said Spokane county; that on or about April 17, 1893, the respondent commenced a suit in the said superior court against George F. and Carrie B. Schorr and the appellant Elizabeth N. Brier. The allegations and prayer of the complaint in said suit were as follows:

"1.   That it now is, and at all times in this complaint mentioned was, a corporation organized and existing under and by virtue of the national banking laws of the United States of America.

"2.   That defendants George F. and Carrie B. Schorr now are, and at all times in this complaint mentioned were, husband and wife.

"3.   That on the 23d day of November, 1891, the plaintiff recovered judgment against defendants George F. Schorr and Carrie B. Schorr in the superior court of the state of Washington, in and for Spokane county, in a suit therein pending wherein this plaintiff was plaintiff and the said George F. Schorr and Carrie B. Schorr were defendants, for the principal sum of $327.25, and the further sum of $50 attorney's fees, and the costs of action taxed at $13.55, which said judgment provided that the same should bear interest at the rate of one and one-quarter per cent. per month from its date, to-wit, November 23,

1891, which said judgment was duly rendered by said
court upon said date, and duly entered as provided by
law.

"4.   That a transcript of said judgment, as provided by
law, was filed with the auditor of Spokane county, Wash-
ington, on the 14th day of December, 1891, and thereafter
by him recorded in Volume "C," Records of Judgments
of said county, on page 61 thereof.

"5.   That said judgment has been ever since its rendi-
tion, and now is, a lien upon the real estate of the defend-
ants George F. and Carrie B. Schorr, situate in Spokane
county, Washington, described as follows, to-wit:   [Here
follows a description of the property as described in the
complaint in this action, as having been conveyed to the ap-
pellant by George F. and Carrie B. Schorr.]

"6.   That thereafter, and on the 21st day of April,
1892, said defendants George F. and Carrie B. Schorr
made, executed, and delivered to defendant E. N. Brier
their certain warranty deed of that date, wherein and
whereby they conveyed to the said E. N. Brier the above
described real estate, for the consideration expressed in
said deed of $2,250, and plaintiff alleges that as a matter
of fact said deed is wholly without consideration and was
made for the purpose of cheating and defrauding this
plaintiff and other of the creditors of said George F. and
Carrie B. Schorr, and plaintiff also alleges that said land
at the time of said conveyance was, and yet is, subject to
the lien of plaintiff's judgment as aforesaid.

"7.   Plaintiff further alleges that the defendants
George F. and Carrie B. Schorr have no other property out
of which plaintiff can make said judgment, save and
except the property described in this complaint and the
following described real estate, to-wit:   [Here follows a
description of the property conveyed to Louise B. Strat-
ton as described in the complaint in this action.]   And
that this last described real estate was upon the 29th day
of April, 1892, conveyed by said George F. and Carrie B.
Schorr to Louise Stratton with a like purpose of defraud-
ing this plaintiff, and that this plaintiff has commenced
suit to subject said property to the lien of plaintiff's
judgment.

"8.   That on the 13th day of April, 1893, plaintiff caused execution to issue upon its said judgment, but there is no property upon which it can levy the same, and out of which it can make the money on said judgment, save and except the two pieces of property described in this complaint.

"Wherefore plaintiff prays judgment against defendants that the said judgment may be declared a lien upon the real estate first above in this complaint described, and that the said deed from said George F. Schorr and Carrie B. Schorr to defendant E. N. Brier *may be set aside and held for naught as against the judgment of plaintiff,* and that a decree may be had against defendants authorizing and directing plaintiff and the sheriff of Spokane county to sell said real estate upon the execution issued on said judgment as aforesaid, and for such other and further relief as to the court may seem meet and proper, and that plaintiff may have a decree for the amount of said judgment and attorneys fees and costs and accumulated interest thereon, amounting to the sum of $460.80 and interest thereon from this day; said decree directing the sheriff of Spokane county to sell said land to satisfy the amount of said judgment, or so much of said land as may be necessary therefor, and for costs of this suit."

Thereafter said defendants, and each of them, appeared in said suit and filed their answers therein.   The admissions, denials, and prayer of each were as follows:

"Admit:
"1.   Each and every allegation in paragraphs one and two of said complaint contained.
"2.   The execution and delivery of the deed in paragraph six of said complaint alleged, at the time therein alleged."
"Deny:
"1.   Each and every allegation in paragraph six of said complaint contained, not hereinbefore specifically admitted.
"2.   Having any knowledge or information of the facts alleged in paragraphs three, four, five, seven, and eight

of said complaint sufficient to form a belief thereof, wherefore defendants deny each and every allegation in said paragraphs contained.

"Wherefore defendants pray judgment against plaintiff for their costs and disbursements in their behalf in this action expended, and for such other and further relief as to the court may seem meet and just.".

Said suit was thereafter duly brought on for trial upon the issues so framed, and upon said trial the court made its findings of fact and conclusions of law, as follows:

"This cause coming on to be tried upon the evidence, the court having listened to the testimony and the argument of counsel, *finds as proven the following*:

"1.    That the plaintiff is a banking corporation organized and existing under and by virtue of the laws of the United States.

"2.    That defendants George F. and Carrie B. Schorr are and have been, at.all times mentioned in these findings, husband and wife.

"3.    That upon the 23d day of November, 1891, plaintiff recovered judgment against defendants George F. and Carrie B. Schorr for the sum of $327.25 principal, $50 attorney's fees, costs of action $13.55, and interest thereon at the rate of one and one-quarter per cent..per month from said 23d day of November, 1891, which said judgment has never been paid, and upon which there is now due and owing $————, and interest thereon at the rate of one and one-quarter per cent. per month from this 13th day of October, 1893.

"4.    That plaintiff filed its transcript of judgment with the auditor of Spokane county, state of Washington, upon the 14th day of December, 1891, as provided by law, and the same was recorded in book "C," Records of Judgments of said county, on page 61 thereof, as required by law; and that an execution was issued upon said judgment and returned *nulla bona.*

"5.    That upon the 21st day of April, 1892, defendants George F. and Carrie B. Schorr conveyed the following described real estate to defendant Mrs. E. N. Brier by

warranty deed of that date, for the consideration expressed in said deed of $2,250, to-wit: [Here follows description of property deeded to appellant by George F. and Carrie B. Schorr, as alleged in the complaint in this action].

"6. That plaintiff's judgment is a lien upon said real estate, and it is entitled to make the same therefrom by execution sale.

"As conclusions of law from the foregoing, the court finds that the plaintiff is entitled to have said real estate sold on execution on said judgment, free and clear of said conveyance, and that the said conveyance to Mrs. E. N. Brier, defendant, is subject to the said judgment of plaintiff."

Upon such findings and the evidence the court made its decree as follows:

"This cause coming on to be heard upon the testimony, the court having heard the evidence and listened to the argument of counsel, and being fully advised in the premises, and having made and filed his findings of fact and conclusions of law herein, it is therefore ordered, adjudged, and decreed by the court that plaintiff's judgment is now, and ever since its rendition has been, a lien upon the following described real estate, to-wit: [Here the decree follows the description of the property conveyed to the appellant as well as that conveyed to Louise Stratton.] That the conveyance made by the defendants George F. and Carrie B. Schorr of said real estate by their warranty deed of date the 21st day of April, 1892, to defendant Mrs. E. N. Brier, alleged in the complaint and referred to in the findings of fact herein, *was and is subject to the lien of the said judgment of plaintiff;* and it is further ordered, adjudged, and decreed that plaintiff may proceed to sell the said real estate on execution upon its judgment in manner and form as provided by the statutes of Washington and the laws of this state, and that the purchaser at such execution sale shall take all the rights, title, and interest therein, *owned, had, and possessed by the defendants George F. and Carrie B. Schorr at the*

*time of the rendition of said judgment, to-wit, on the* 23d *day of November,* 1891, to the same extent and degree as it might and would have taken the same had said conveyance by George F. and Carrie B. Schorr not been made to the defendant Mrs. E. N. Brier; and it is further ordered, adjudged, and decreed that out of the moneys so arising from said sale the sheriff shall pay to the plaintiff the said judgment, costs, interest, and attorneys' fees taxed therein and accrued thereon, and in addition thereto the costs of this suit, taxed at $30.25."

That the deed referred to in the pleadings, findings, and decree in said suit is the same deed set forth in the complaint herein, and the realty referred to and described in the pleadings, findings, and decree in said suit, is the same realty described in the complaint herein; that the decree rendered in said suit, and hereinbefore set forth, was not appealed from, and is now in full force and effect; that, relying upon the judgment and upon the decree hereinbefore set forth, this respondent caused said judgment to be revived by the said superior court upon March 17, 1897, and upon March 25, 1897, caused a writ of execution upon said judgment to issue from said superior court to the sheriff of said Spokane county; that thereafter the said sheriff duly levied upon the property described in the complaint herein, as the property of the judgment debtors Schorr, and thereafter, upon May 1, 1897, duly sold said property at execution sale to this respondent; that after the sale was so made to the respondent it applied to the superior court of Spokane county for an order confirming said sale, and said court, while finding the sale regular in all other respects, refused to confirm it for the reason that the realty sold was the homestead of said judgment debtors; that thereupon respondent appealed from said refusal and order of the court to the supreme court of the state of Washington, the action of the lower court was by said supreme court reversed (*Traders' National Bank v. Schorr,*

45-24 WASH.

20 Wash. 1, 54 Pac. 543), the sale to the respondent was confirmed, and a deed for said property issued to it by the sheriff of said county.

The facts as found in the suit of the respondent brought in 1893 against George F. and Carrie B. Schorr and the appellant are undisputed. Is the decree rendered in that action *res judicata* as to the rights of the appellant in this action? The court below found as a conclusion of law that, by the decree entered in the suit brought in 1893 by the respondent against the Schorrs and the appellant, the conflicting rights, claims, and interests of the respondent and the appellant were adjudicated and forever placed at rest; that by the order of March 17, 1897, the lien of the judgment of the respondent was revived and continued against the real estate claimed by the appellant; that the appellant was bound by the order of revival; that the respondent was the owner in fee simple of the real estate claimed by appellant, free from any right, title, or interest claimed by the appellant; and that the respondent's title should be quieted against the appellant. The statute, in force when the original judgment of the respondent against the Schorrs was obtained and filed in the auditor's office of Spokane county, was to the effect that the real estate of any judgment debtor, and such as he might acquire, should be held and bound to satisfy any judgment recovered in this state *for the period of five years from the day on which the judgment was rendered.* The *lien* on a judgment of the superior court of the county in which the real estate of the judgment debtor was situated was from the date of the rendition of the judgment, if within twenty days of that time a certified transcript of the judgment was filed and recorded in the county auditor's office of the county where the judgment debtor's lands were situated; but, if the transcript was not filed in twenty days from the rendi-

tion of the judgment, the lien of the judgment was suspended until the filing of the transcript. From and after the filing of the transcript by the county auditor, the judgment became a lien upon all real estate of the judgment debtor in the county *for the period of five years, commencing from the date on which the judgment was rendered.* 2 Hill's Code, § 460. The judgment creditor had the right to enforce the collection of his judgment out of any real estate of the judgment debtor *upon which the judgment was a lien.* 2 Hill's Code, § 467, subd. 1. If any judgment remained unsatisfied at the end of five years after the date of its rendition, the lien thereof might be revived and continued. To accomplish this, the judgment creditor was required to file a motion with the clerk of the court where the judgment was entered, "to *revive* and continue the lien of the same, *with leave to issue an execution.*" This motion was required to state the names of the parties to the judgment, the date of its entry, and the amount claimed to be due thereon, and it was required to be verified in the same manner as a complaint. At any time after this motion was filed the party filing it could cause notice to be served on the judgment debtor in like manner and with like effect as a summons, and this notice, with a copy of the motion, was to be served by the sheriff or other officer as an original summons. By it the judgment debtor was cited to appear and show cause why said motion should not be allowed. The judgment debtor has the same time to appear and show cause as he had to answer a complaint, and the law applicable to the service of summons applied to the service of the notice. The judgment debtor could answer or demur to the motion within the time allowed by law to answer the complaint, and could allege any defense to the motion which he might have. If no answer was filed within the time prescribed, the mo-

tion was to be allowed as of course. If an answer was filed, the moving party could demur or reply. The pleadings were required to be subscribed and verified, *and the proceedings concluded as in original actions.* The order made by the court was required to specify the amount due upon the unsatisfied judgment *for which execution was to issue,* and the motion was not to be granted unless there was proof that the judgment or some part thereof remained unsatisfied. The effect of the order of the court *was to operate as a revival of the judgment for the amount found due,* and that the same should *"be and continue a lien upon real estate of the judgment debtor* for a period of five years *from and after the date of such order,* in like manner with the original judgment." A transcript of the same was to be filed within twenty days in the office of the county auditor of the county where the lands of the judgment debtor lay, or the lien was suspended until such transcript was filed. Revived judgments were to bear the same interest and be in all respects similar to original judgments as to lien and enforcement or collection. No judgment was to be revived or continued unless proceedings were commenced *within* six years after the date of its rendition. 2 Hill's Code, §§ 462, 463. It would seem that at the end of five years from its rendition a judgment ceased to be effective for any purpose; no real estate of the judgment debtor was bound for its satisfaction, and no execution could be issued thereon. The owner of such dead or expired judgment might revive it. While the language in the first part of § 462, *supra,* is "the lien thereof may be revived and continued," § 463, *supra,* declares that the order of the court "shall operate as a revival of the judgment for the . amount found due at the time of such revival, and the same [that is, the revived judgment] shall be and continue a lien upon real estate of the judgment debtor for a· period of five years *from and after the date of such order, in*

*like manner with the original judgment."* It is not the mere lien that is revived; it is the judgment itself, and the lien as an incident of the revived judgment, if a certified copy is filed with the auditor, becomes operative in the same manner as if it was an original judgment. Sections 462, 463, *supra,* simply point out a mode by which an action on a judgment which has ceased to be effective for any purpose may be brought so as to obtain a new judgment. The very term "revive" means to restore or bring again to life. When revived it becomes a new judgment, on which execution may issue as a personal liability, and it continues in existence for five years longer, from the date of the order of revival, and the lien thereof, like the judgment, an incident thereto, is a new creation, and dates from the order of revival, if a transcript is filed in twenty days; otherwise, the lien is suspended just as if it was an original judgment. The contention of the respondent that the proceedings to revive must be instituted "at the end" of the five years, and not "within" the year following, cannot be sustained. While § 462, *supra,* reads, if any judgment remains unsatisfied "at the end of five years after the date of its rendition, the lien thereof may be revived," etc., § 463, *supra,* says that "no judgment shall be revived or continued unless proceedings for such revival or continuance shall be commenced *within six* years after the date of its rendition." The law does not provide that revival proceedings shall be commenced "at the end" of five years from the rendition of the judgment, but does provide that "within a year,"—that is, six years after the date of the rendition of the judgment,—revival proceedings must be instituted. ˙A judgment creditor is supposed to avail himself, within the five years, of the right to issue an execution and exhaust thereunder the property of the judgment debtor upon which the judgment is a lien.

The law then gives the judgment creditor, after the first five years, the further right to have a new judgment for any unpaid balance, which, from the date of its rendition, will also become a lien for an additional five years, provided proceedings to revive such judgment are instituted within the one year, as we have stated. The proceedings to revive a judgment are analogous to complaint, answer, and reply in an ordinary action at law. The same formalities that are necessary for bringing a suit prevail. It is in all respects as much a new suit as if it was a common-law action on the judgment. The original judgment was rendered November 23, 1891. Five years from November 23, 1891, would be November 23, 1896, and on the next day, November 24, 1896, a motion to revive the judgment was filed under §§ 462 and 463, *supra,* but the order reviving it was not entered until March 17, 1897. Was the lien of the original judgment lost to the respondent, so that there was no lien against the real estate of the judgment debtor from November 24, 1896, until March 17, 1897? We think it was.

"A judgment-lien, binding the present and future real property of the debtor, is a creation of statute laws and has no other existence; a general lien by judgment does not constitute *per se* a property in the land itself, but only gives a right to levy on the same to the exclusion of adverse interests subsequent to the judgment. Hence a judgment creditor has neither *jus in re* nor *jus ad rem* in the debtor's land, but only the right to make his lien effectual by a sale under execution." 1 Black, Judgments, § 400.

"A judgment is not a specific lien upon any particular real estate of the judgment debtor, but a general lien upon all his real estate, subject to all prior liens, either legal or equitable, irrespective of any knowledge of the judgment creditor as to the existence of such liens." *Rodgers v. Bonner,* 45 N. Y. 379.

". . . the lien of a judgment upon the lands of the judgment debtor is entirely the creature of the statute,

and is not dependent in any manner upon the contract of the parties. It begins, continues and terminates at the will of the legislature." *Houston v. Houston,* 67 Ind. 276; *Buchan v. Sumner,* 47 Am. Dec. 305 (2 Barb. Ch. 165).

Section 460, 2 Hill's Code, provides that the real estate of a judgment debtor shall only be held and bound to satisfy any judgment for the period of five' years from the date on which such judgment was rendered; and it also provides that the *lien* of the judgment on such real estate shall only be for five years, commencing from the date on which the judgment was rendered. Section 463 provides that a revived judgment shall be and continue a lien upon real estate of a judgment debtor for a period of five years *after the date of the order of revival.* It seems to us that the legislature has made it so plain there is no room for construction that the right to enforce the original judgment and lien incident thereto was at an end five years from the rendition of the judgment, and that the revived judgment and lien incident thereto could only be enforced for five years *from* the time of the rendition of the revived judgment. It is not within the province of a court to extend the lien to a case not provided by statute. Judge LANE, in delivering the opinion of the supreme court of Ohio, in the case of *Douglass v. Huston,* 6 Ohio, 156, 162, says:

"The existence, validity and extent of a judgment lien, are matters purely legal, dependent upon statutory provisions. If it fail at law, it cannot be aided in equity."

If the lien of a judgment is lost, and it is afterwards revived, a mortgage executed by the judgment debtors during the continuance of the original lien takes precedence over the revived judgment. *Tracy v. Tracy,* 5 *McLean,* 456 (24 Fed. Cas. p.114).

Under the statute of California the lien of a judgment

was two years from its date.   A judgment was obtained
on the 11th of October, 1853, upon which execution was
issued and levied upon the 4th of October, 1855, and the
property sold thereunder on the 20th of October, 1855.
The question was whether the issue and levy of the execu-
tion before the lien of the judgment expired had the
effect to prolong the lien beyond the two years.   The su-
preme court of California says:

"The rule that confines the lien of the judgment strictly
within the two years, is the most simple and certain in
theory, and the most beneficial in practice.   If we hold
that the lien of the judgment may be prolonged beyond
the period stated, by the issue and levy of an execution
within the time, then we can fix no definite and certain
limits to the continuance of the lien.   Once we pass the
limits of the statute, we open a door to the most vexatious
litigation.   The titles to real estate would become uncer-
tain, and the useful end intended to be accomplished
by our recording system would, in fact, be defeated.   A
party wishing to purchase the land of the judgment
debtor could not do so with safety without the exercise
of extraordinary diligence.   The provisions of the code
give the judgment creditor ample protection.   He can
cause an execution to issue at any time; and, under it,
the sheriff can advertise and sell within the short period
of twenty days.   There is,therefore, no reason for allow-
ing him the privilege of delaying the issue of execution
until it is too late to sell before the lien expires.   It is
true that an occasional hard case may arise under the
strict rule, but upon the whole, it must be productive of
the most good."   *Isaac v. Swift,* 10 Cal. 71 (70 Am.
Dec. 698); *Bagley v. Ward,* 37 Cal. 121 (99 Am. Dec.
256 and note); *Roe v. Swart,* 5 Cow. 294; *Little v.
Harvey,* 9 Wend. 157; *Lawson v. Jordan,* 19 Ark. 297
(70 Am. Dec. 596); *McCormick v. Alexander,* 2 Ohio, 66.

In *Lawson v. Jordan, supra,* where the lien of the
judgment had expired, it was also held that a junior
judgment with a lien would have priority over one with-

out, but of older date. In Iowa it was held that a judgment lienor, whose judgment had terminated by limitation before the rendition of a judgment in favor of a second judgment creditor against the same debtor, and who had at the time of recovery of the second judgment taken no steps to preserve or revive his lien, could not revive the same to the prejudice of such subsequent judgment. See, also, *Boyle v. Maroney,* 73 Iowa, 70 (35 N. W. 145); *Virden v. Shepard,* 72 Iowa, 546 (34 N. W. 325).

We now come to the consideration of cases which are identical with the case at bar in principle, and nearly so in fact. In the case of *Flagg v. Flagg,* 39 Neb. 229 (58 N. W. 109), the facts show certain judgments were recovered against a debtor, who thereafter executed a mortgage upon premises owned by him, which were subject to the lien of the judgments. At the time of commencement of an action for the foreclosure of a first mortgage in favor of a plaintiff who had purchased the outstanding judgments against the debtor, the same were a valid and subsisting lien upon the real estate in controversy, superior to the lien of the second mortgage. During the pendency of the action, the lien of the judgments, as provided by the statute of Nebraska, expired. The second mortgagee, by leave of court, filed an amended answer in the suit to foreclose the first mortgage, setting up the dormancy of the judgment pending the prosecution of the action. It is provided by the Code of Nebraska that:

"If execution shall not be sued out within five years from the date of any judgment that now is or may hereafter be rendered in any court of record in this state, or if five years shall have intervened between the date of the last execution issued on such judgment and the time of suing out the writ of execution, such judgment shall

become dormant and cease to operate as a lien on the estate of the judgment debtor."

The court says:

"In construing a statute where the meaning is not clear, the rule is to give it such interpretation as will comport with what is supposed to have been the purpose or intention of the legislature; in other words, where the intention is manifest, it will control, rather than the language employed by the lawgivers. In the section quoted, however, there is no ambiguity; no words employed which operate to defeat the clear and manifest intention of the enacting power. In fact, there is no room for construction. We must, therefore, apply the section according to its literal meaning. It is obvious that in case a judgment creditor fails for more than five years after the date of his judgment to sue out an execution, the judgment becomes dormant, and ceases to be a lien upon the real estate of the defendant. We see no escaping the conclusion that, where a judgment becomes dormant, its lien is thereby lost as against a mortgage made by the debtor during the life of the judgment."

In the case of *Tucker v. Shade*, 25 Ohio St. 355, it is said:

"Judgment liens are created by the statute, and their extent and duration are such as the statute prescribes."

The Code of Ohio provides that:

"The lands and tenements of the debtor within the county where the judgment is entered, shall be bound for the satisfaction thereof, from the first day of the term at which the judgment is rendered. . . . All other lands . . . shall be bound from the time they shall be seized on execution."

A further provision is made that:

"If execution shall not be sued out within five years from the date of any judgment, . . . or if five years shall have intervened between the date of the last execution issued on such judgment and the time of the suing

out another writ of execution thereon, such judgment shall become dormant, and shall cease to operate as a lien on the estate of the judgment debtor."

The court said:

"It is well settled that the title of a purchaser from the judgment debtor is, on the judgment becoming dormant, discharged from the lien, and that the subsequent revivor of the judgment will not affect such title."

In the case of *Norton v. Beaver,* 5 Ohio, 178, it was held that the rights of others, acquired or subsisting under the dormancy of the judgment, are subordinate to the revived lien. That court says:

"In a country where land is one of the most familiar and ordinary subjects of trade, the policy of the law does not favor liens which impose embarrassments on their transfer. The purchaser who acquires title to land at the time when no lien exists, or at a time when, by the creditor's delay, a once existing lien becomes dormant, appears to us to have an equity preferable to him who has indulged in delay. . . . The lien of the creditor, at this time, is indefinite and contingent. It is not a subsisting interest in the lands, but a power to set up an interest that may never be exercised. He may prefer to enforce payment of his debt against other property, or against the person of the debtor. The purchaser has no means in his hands to guard against future dormant claims. It is, therefore, better that such sleeping creditors should sometimes lose their money, than that titles acquired in good faith, while they slumbered, should be rendered precarious."

In the case of *Miner v. Wallace,* 10 Ohio, 404, it was held that a mortgage executed by a judgment debtor after recovery of the judgment takes priority over the judgment after its dormancy and revival. As was well said by the court in the case of *Graff v. Kipp,* 1 Edw. Ch. 619:

"A plaintiff must take care to sell the lands of the

defendant before the expiration of the ten years, in order to avoid the danger of other incumbrances intervening; or if he wishes to continue a lien without a sale, then he must have a fresh judgment docketed before other creditors come in and obtain judgments." *Coombs v. Jordan,* 3 Bland Ch. 284 (22 Am. Dec. 236); *McCormick v. Wheeler,* 36 Ill. 114 (85 Am. Dec. 388).

We conclude that, when a judgment ceases to be effective, the lien likewise ceases, and it cannot be revived so as to affect the rights of intervening purchasers; and that from November 24, 1896, until March 17, 1897, the judgment of respondent ceased to be effective for any purpose, and the lien thereof also ceased, and was not binding upon the property in controversy; that the sale on execution on the revived judgment passed only the interest of the judgment debtors subject to the intervening interest of the appellant which attached to the property under her deed, unless the decree entered in the suit brought by the respondent in 1893 against the appellant and the Schorrs estopped the appellant from setting up that interest.

"The question of the conclusiveness of records most frequently arises on judgments. The doctrine is well established that a cause of action once finally determined, without appeal or some proceeding for the annulment of the judgment between the parties on the merits by any competent tribunal, cannot afterwards be litigated by a new proceeding either before the same or any other tribunal. But there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a *second action* upon the same claim or demand and its effect as an estoppel in *another action* between the same parties upon a *different claim or cause of action.* In the former case, the judgment as rendered upon the merits constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them not only

as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. Such demand or claim, having passed into judgment, cannot again be brought into litigation between the parties in proceedings at law upon any ground whatever. But where the *second action* between the same parties is *upon a different claim or demand,* the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted *upon the determination of which the finding or verdict was rendered.* In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in suit upon a different cause of action, the inquiry must always be *as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined.* Only upon such matters is a judgment conclusive in another action." 11 Am. & Eng. Enc. Law (2d ed.), p. 390.

What was the claim upon which the action was waged between the respondent and the appellant and the Schorrs in 1893? It was that a judgment recovered against the Schorrs on November 23, 1891, and which had been filed in the office of the auditor of Spokane county, December 14, 1891, should be declared a superior lien upon the property conveyed to the appellant by the Schorrs by the deed filed for record June 20, 1892; that plaintiff in that action, respondent in this, under the execution issued on the judgment of November 23, 1891, might have the right to sell the property described in said deed to satisfy the judgment upon which the execution issued, and that Mrs. Brier's deed might be "set aside and held for naught *as against the judgment of the plaintiff."* What is the claim in this action? Stating it negatively, it is that a judgment recovered by the respondent against the Schorrs on March 17, 1897, on which an execution was issued on March 25, 1897, and under which the property in

controversy was sold, is not superior to the rights of the appellant in her deed from the Schorrs filed for record June 20, 1892.   The allegation in the complaint of 1893, that "the deed was wholly without consideration and was made for the purpose of cheating and defrauding the plaintiff," was immaterial, because it made no difference, so far as the plaintiff's rights in that suit were concerned; for if it (the bank) obtained a judgment and filed it, as is alleged, the law gave it a lien superior to the claim under the deed of 1892.

"Issues   which are not material to the controversy, although determined, do not become *res judicata." McGee v. Wineholt,* 23 Wash. 748 (63 Pac. 571).

It was not only unnecessary to litigate that question, but there was no inquiry as to the question of fraud in that action.   The respondent should be bound by its pleadings and proof in this action.   It pleaded that the court made certain findings of fact in the suit brought in 1893. It set forth those facts.   They were not denied, and it introduced the record to prove them.   The recital in the findings is:

"This cause coming on to be tried upon the evidence, the court, having listened to the testimony and the argument of counsel, *finds as proven* the following."

It finds all the facts as claimed by plaintiff in its complaint, except on the allegation "that the deed was wholly without consideration, and was made for the purpose of cheating and defrauding the plaintiff," and on this point the finding is "that upon the 21st day of April, 1892, defendants George F. and Carrie B. Schorr conveyed the following described real estate [the description is the same real estate as in controversy in this action] to the defendant Mrs. E. N. Brier, by warranty deed of that date, for the consideration expressed in said deed of $2,250."

The court then made its legal conclusions in this language:

"As conclusions of law *from the foregoing* the court finds that the plaintiff is entitled to have said real estate sold on execution on said judgment free and clear of said conveyance, *and that the said conveyance is subject* to the said judgment of plaintiff."

The decree of the court recites that he has "made and filed his findings of fact and conclusions of law herein, it is therefore ordered, adjudged," etc. Why is it adjudged? Because certain facts have been found to exist. What is adjudged? That the judgment of the plaintiff ever since its rendition has been a lien on the property; that the conveyance made by the defendants to Mrs. E. N. Brier, by their deed of the 21st of April, 1892, *was and is subject to the lien of the judgment of the plaintiff;* and that the plaintiff may sell the property on execution upon its judgment, and that the purchaser at such sale shall take all the right, title, and interest therein owned and possessed by the defendants Schorr *at the time of the rendition of the judgment, to-wit, November* 23, 1891, to the same extent and degree as it might or would have taken the same had said conveyance not been made to Mrs. Brier. There is nothing in this decree that sets aside the deed as being fraudulent or void, but it simply declares, what the law declared, without the decree, that the purchaser at the execution sale took the interest in the property that the judgment debtors had at the date the judgment was rendered. It would be doing violence to the findings and the decree if we should construe it as the respondent contends for. There is nothing in the decree indicating that Mrs. Brier was cut off from her right to redeem from a sale on the execution, and, after the court had expressly found that the Schorrs had conveyed the property to her for $2,250, it is not to be presumed

that the court intended to cut off her right to redeem from the sale; for, quoting from respondent's brief:

"It is presumed that the doings of a court of record are regular and proper, that its jurisdiction was properly acquired, that its proceedings are legal and valid, and that its decisions are well founded and free from error."

To construe this decree as respondent asks us to do would violate the presumption that the decisions of courts are free from error; for as the court found the conveyance to Mrs. Brier to be a fact, and to be for $2,250, it could not, under the law, decree that Mrs. Brier should not have the right to redeem. In addition to the record the appellant introduced uncontradicted proof, which we think she had a right to do, that no evidence whatever on the question of fraud was introduced in the suit brought in 1893. This testimony in no way contradicts the record, but is consistent with it.

In the case of *Packet Co. v. Sickles,* 5 Wall. 580, Mr. Justice NELSON uses the following language:

"As we understand the rule in respect to the conclusiveness of the verdict and judgment in a former trial between the same parties, when the judgment is used in pleading as a technical estoppel, or is relied on by way of evidence as conclusive, *per se,* it must appear, by the record of the prior suit, that the particular controversy sought to be concluded was necessarily tried and determined—that is, if the record of the former trial shows that the verdict could not have been rendered without deciding that particular matter, it will be considered as having settled that matter as to all future actions between the parties; and further, in cases where the record itself does not show that the matter was necessarily and directly found by the jury, evidence *aliunde* consistent with the record may be received to prove the fact; but, even where it appears from the extrinsic evidence that the matter was properly within the issue controverted in the former suit, if it be not shown that the verdict and judgment

necessarily involved its consideration and determination, it will not be concluded." *Turley v. Turley,* 85 Tenn. 251 (1 S. W. 891); *Burnham v. Webster,* 1 Woodb. & M. 172 (4 Fed. Cas. No. 2179); *Sawyer v. Woodbury,* 7 Gray, 499 (66 Am. Dec. 518); *Russell v. Place,* 94 U. S. 606.

We conclude that the matters arising in this suit were not litigated and determined in the action brought by the respondent, in 1893, against the Schorrs and the appellant and pleaded in this action as a defense. We think the evidence shows that the deed from the Schorrs to appellant was intended as a mortgage, but in that event Mrs. Brier held title in fee, "subject to the judgment," and, after the lien of the judgment of the bank expired, was the owner absolutely relieved of its lien. But the question as to whether the instrument is a deed or a mortgage was immaterial, under the issues in the suit brought in 1893, and one which did not concern the plaintiff. If a mortgage, it was subject to the lien of the bank's judgment; and if a deed, it occupied the same position. There was no occasion in that suit for determining the character of the instrument under which Mrs. Brier claims. The appellant was not a party to the proceedings to revive the judgment, she was not a necessary party to the same, and she was not required to take notice thereof. *Anderson v. Bigelow,* 16 Wash. 198 (47 Pac. 426); *Cullity v. Dorffel,* 18 Wash. 122 (50 Pac. 932).

We conclude from the evidence in this case that the court should have found the facts to be as requested by the appellant, and should have entered its decree adjudging and decreeing that the instrument of date April 21, 1892, made, executed, and delivered by George F. Schorr and Carrie B. Schorr to the appellant, recorded in Book 45, at page 223, of the Records of Deeds on file in the office of the auditor of Spokane county, was intended as secur-

46-24 WASH.

ity for the payment to appellant of the sum of $2,250, then owing to appellant from the defendants George F. and Carrie B. Schorr, and was in truth and in fact intended as a mortgage to secure said sum; that appellant is entitled to have said mortgage foreclosed, and a decree entered for the sale thereof by the sheriff of Spokane county of said premises covered thereby, and that, after the said sheriff shall have paid to himself his regular fees and commission for and upon said sale, he shall pay to appellant the sum of $2,250, with interest thereon from April 21, 1892, at the legal rate, and the costs and disbursements of this suit; that whatever interest in said premises the defendants Jacob Schorr, Charles F. Schorr, Louise B. Stratton, Palmer & Rey (a corporation), Northwestern & Pacific Hypotheekbank (a corporation), Northwestern Wadham, J. M. Comstock, City of Spokane (a municipal corporation), J. H. Bishop & Co. (a corporation), H. L. Tatum and J. J. Bowen (copartners as Tatum & Bowen), and Henry M. Tilford, each has, or claims to have, in or to said premises described in said instrument, or any part thereof, each and all of said claims and interests are subject, subsequent, and inferior to the lien of said appellant, by virtue of said instrument, in form a warranty deed, but intended as a mortgage, from the time of the filing thereof for record; that upon failure of respondent Traders' National Bank to issue execution and sell the premises referred to thereunder within five years from and after the rendition of its said judgment, to-wit, November 23, 1891, the lien of said judgment was lost, and on the revival of said judgment the lien of said revived judgment became, and has ever since remained, and now is, subject, subsequent, and inferior to the rights of said appellant, by virtue of said instrument, in form a warranty deed, but intended as security, heretofore referred

to; that the effect of the decree entered October 13, 1893, in the aforesaid action, was to adjudicate that at the time of the entry of said decree, said judgment of the Traders' National Bank was then a superior and paramount lien upon the property described in said decree, and the same was not intended to, and did not, determine the invalidity of said deed from George F. Schorr and Carrie B. Schorr to the appellant of date April 21, 1892; nor was said decree intended to determine, as between appellant and defendants George F. and Carrie B. Schorr, that said instrument was in fact a mortgage; that appellant is entitled to recover from respondent her costs and disbursements in this behalf made and expended.

The judgment and decree entered in the court below is reversed and set aside, and this cause is remanded, with instructions to enter a decree to conform to this opinion; the appellant to recover her costs on this appeal.

REAVIS, C. J., and FULLERTON and ANDERS, JJ., concur.